# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **THE WATERS WORKS AND SEWER BOARD OF GADSDEN,** | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) ) ) |
| **3M COMPANY, et al.** | ) ) |
| **Defendants.** | ) ) ) |

CASE NO.: 4:16-CV-1755-KOB

## MEMORANDUM OPINION

Plaintiff Waters Works and Sewer Board of Gadsden brought suit against more than thirty manufacturers, distributors, and users of chemicals in Etowah County Circuit Court; the Board alleged that the Defendants had contaminated the Board's water source with perfluorinated chemicals. The Defendants represent the majority of the carpet industry in North America and are concentrated around Dalton, Georgia. However, Defendant Industrial Chemicals is an Alabama corporation based in Birmingham. Defendant Shaw Enterprises removed the case to federal court, alleging that the Board had fraudulently joined Industrial Chemicals to defeat diversity jurisdiction. The Board moved to remand the case, arguing that Industrial Chemicals was properly joined and, therefore, complete diversity did not exist and thus the court lacked subject matter jurisdiction.[1]

Because the court agrees that Industrial Chemicals was not fraudulently joined, it will

---

[1] In its motion to remand, the Board also argued that removal was improper because Defendant Aikman & Collins Floor Coverings International Inc. did not consent to the removal. The Defendants responded by noting that Aikman & Collins was a dissolved entity. In its reply brief, the Board withdrew its argument that removal was improper because Aikman & Collins did not consent. *See* (Doc. 193 at 16–17).

grant the Board's motion and remand this case to state court.

I.      BACKGROUND

   A.      Allegations in the Complaint

Despite the scope of this action, the allegations in the complaint are simple. Plaintiff Water Works and Sewer Board of the City of Gadsden is the public water supplier to the City of Gadsden, Alabama, and the surrounding area. The Board draws its source water from the Coosa River at a point downstream from Dalton, Georgia, and has recently learned that its water supply is contaminated with perfluorinated chemicals (PFCs), including perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS).

The Board has named manufacturers, suppliers, and users of PFCs as Defendants it believes are jointly liable to it for negligence, nuisance, trespass, and wantonness for causing the presence of the chemicals in the Board's water source. Because of the contamination, the Board says it has lost profits as customers have switched to other sources of water. Further, the Board says its current water filtration system cannot remove or reduce PFC levels in the water to the level recommended by the EPA.

   B.      Evidence Provided to the Court

      1.      *Evidence Submitted by the Plaintiff*

The Board submitted evidence about industrial use of PFCs, including a white paper from the Association of State and Territorial Solid Waste Management Officials (ASTSWNO) Federal Facilities Research Center's Remediation and Reuse Focus group on PFCs. *See* (Doc. 164-2). The paper notes that PFOA and PFOS are the two most prevalent types of PFCs, and that PFCs have been used by companies to make flluropolymer coatings and products that are oil and water

2

repellent, including clothing, upholstery, paper, carpets, and non-stick cookware. Additionally, the National Institute of Environmental Health says that PFCs can be used to ensure that products, such as carpet and sofas, are resistant to stains. *See* (Doc. 164-3 at 2).

PFCs are also used in other compounds. An OECD/UNEP[2] Global PFC Group Synthesis Paper submitted by the Board also mentions that PFCs are sometimes components of foaming agents and hydraulic fluids. *See* (Doc. 164-6). According to research cited by the ASTSWNO paper, the highest concentrations of PFCs are found in areas with direct discharge from industries that utilize PFCs.

The Board also submitted an Environmental Protection Agency question and answer document on PFC contamination in Dalton, Georgia. The EPA believes that PFC contamination in Dalton results from industrial discharge by carpet manufacturers. *See* (Doc. 164-4 at 5). Finally, the Board has also submitted evidence regarding Industrial Chemicals' business and its potential relationship to PFCs. Industrial Chemicals, an Alabama corporation, maintains a distribution site in Dalton, and its advertising materials say it sells "textile chemicals," "surfactants," and "polymers," as well as foaming agents, hydraulic fluids, and metal plating and finishing chemicals. (Doc. 164-5 at 2–3). Industrial Chemicals is also a distributor for Omni-Chem$^{136}$, which supplies over 5,000 different chemical products.

The Board also notes that distribution is not the sole focus of Industrial Chemicals' business. According to the company's website, it also transports and disposes of waste materials. *See* (Doc. 193-5).

     2.  *Evidence Submitted by the Defendants*

---

[2] The Organisation for Economic Co-operation and Development (OECD)/United Nations Environment Programme (UNEP).

In the notice of removal and also in opposition to the Board's motion to remand, the Defendants provided numerous affidavits to establish that the Board fraudulently joined Industrial Chemicals. The affidavits fall into three general categories: Industrial Chemicals officers; expert testimony; and the other Defendants stating they did not buy chemicals containing PFCs from Industrial Chemicals.

The Defendants have provided two affidavits from Chip Welch, the CEO/President of Industrial Chemicals. In his first affidavit, Mr. Welch says that Industrial Chemicals has never used PFCs during a manufacturing process or marketed or sold chemicals designed to create water or stain resistance. Industrial Chemicals had records of sales dating from 2005. Mr. Welch reviewed sales made to Defendants and says, to his knowledge, none of the chemicals the company sold to these Defendants contained PFCs. *See* (Doc. 2-2).

In his second affidavit, Mr. Welch states that the polymers sold by the company are used for water treatment and do not contain PFCs; the items purchased from Omni-Chem[136] do not contain PFCs; and the hydraulic fluids sold by the company do not contain PFCs. Further, Mr. Welch says the company has never sold to any company located in or around Dalton, Georgia surfactants used in firefighting foams or mist suppressants for metal plating, products that commonly contain PFCs. *See* (Doc. 189-24).

William Welch, Industrial Chemicals' original founder, also submitted an affidavit. Mr. Welch states that Industrial Chemicals opened a warehouse in Dalton, Georgia in 1996 and that, to his knowledge, the company never sold products containing PFCs to customers in that area. Mr. Welch says the products sold to customers in Dalton were "not chemicals designed to impart water, strain, or grease resistance to carpet or other textile products." *See* (Doc. 189-21 at 4).

The Defendants also submitted an affidavit from Dr. Dennis Paustenbach, an industrial

4

hygienist and toxicologist. Dr. Paustenbach says he reviewed a list of the all chemical products Industrial Chemicals sold to these Defendants, and none contained PFCs or are known to degrade into PFCs. In response, the Board has questioned Dr. Paustenbach's objectivity and methods. *See* (Doc. 193-1 at 4).

Finally, the Defendants have submitted just short of 30 other affidavits saying that none of them purchased chemicals containing PFCs from Industrial Chemicals. (Docs. 189-1–11, 13–21, 23, 25–29). Additionally, the Defendants provided an affidavit from the managing director of Omni-Chem[136] stating that none of the products purchased or distributed by Industrial Chemicals contained PFCs or are known to degrade into them. (Doc. 189-22).

## II. LEGAL STANDARD

A defendant may remove a case from state court if the action could have originally been filed in federal court. *See* 28 U.S.C. § 1441(a). Generally, federal courts have jurisdiction over civil cases where the amount in controversy exceeds $75,000 and complete diversity between the parties exists. *See* 28 U.S.C § 1332; *Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998) (noting that for the diversity requirement to be met, "every plaintiff must be diverse from every defendant").

Even if complete diversity is not present, an action may still be removable if the joinder of the non-diverse parties was fraudulent. *See Triggs*, 154 F.3d at 1287. Joinder is fraudulent in two circumstances: (1) where no possibility exists that the plaintiff can prove a cause of action against the resident defendant; or (2) where the complaint contains outright fraud in the pleading of jurisdictional facts. *See id*. The Eleventh Circuit has also recognized a related theory— fraudulent misjoinder. Fraudulent misjoinder occurs when claims against a non-diverse

5

defendant are joined to the claims against the diverse defendant, even though the claims share "no real connection." *See id*. at 1289.

The court determines whether a party has been fraudulently joined "based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT&T Co*., 139 F.3d 1368, 1380 (11th Cir. 1998). However, the court should proceed with caution in looking beyond the pleadings; causation should not be conflated with jurisdiction. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) ("The fact that the plaintiffs may not ultimately prevail against the individual defendants because of an insufficient causal link between the defendants' actions and the plaintiffs' injuries does not mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis."). Jurisdictional analysis "must not subsume substantive determination." *Id*. (quoting *B, Inc. v. Miller Brewing Co*., 663 F.2d 545, 550 (5th Cir. Unit A 1981)).

The removing party's burden is a "heavy one." *Crowe*, 113 F.3d at 1538. A defendant must demonstrate by clear and convincing evidence that a plaintiff fraudulently joined a resident defendant. *See Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 n.2 (11th Cir. 2007). And a removing defendant asserting fraudulent joinder must show that the plaintiff could not possibly state a claim against the resident defendant in state court. *Triggs*, 154 F.3d at 1287.

Conversely, a plaintiff's burden is much lighter. He "need not have a winning case . . . for the joinder to be legitimate." *Id.* Rather, he need only show a "reasonable basis for predicting that the state law *might* impose liability on the facts involved." *Crowe*, 113 F.3d at 1538 (emphasis in original) (internal quotation marks omitted). Also, the court must "resolve all questions of fact . . . in favor of the plaintiff." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553,

1561 (11th Cir. 1989). However, a question of fact must exist for the plaintiff to enjoy that presumption; if the defendant provides undisputed evidence, the court may accept it. *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005). Doubt about a legal issue under state law must also be resolved in favor of remand. *See Crowe*, 113 F.3d at 1538 ("To determine whether the case should be remanded, the district court . . . must resolve any uncertainties about state substantive law in favor of the plaintiff.").

## III.  DISCUSSION

The sole issue presented in the motion to remand is whether the Board properly joined Industrial Chemicals, an Alabama corporation, to this action. The Defendants argue that Industrial Chemicals was both fraudulently joined and misjoined to this action because the company did not sell any chemicals containing PFCs to the Defendants or any other customers in the Dalton area. The court will address both grounds on which Defendants seek to defeat Plaintiff's motion to remand.

A.  Fraudulent Joinder

The removing Defendants have the heavy burden of proving "there is *no possibility* the plaintiff can establish a cause of action against the resident defendant." *Crowe*, 113 F.3d at 1538 (emphasis added). To determine whether they have met this burden, the court reviews both the legal sufficiency of the complaint as well as the Plaintiff's and Defendants' factual allegations. *Id*. The removing Defendants will prevail only if they prove, by clear and convincing evidence, that none of Plaintiff's claims against the resident Defendant have any possibility of success. Therefore, these Defendants must prove that there is no possibility that Industrial Chemicals has ever sold, distributed, transported, supplied, or disposed of any chemical products containing

7

PFCs or PFC-producing compounds to or on behalf of any entity in the Dalton area since Industrial Chemicals was founded in 1970. Defendants' burden is regarded as "heavy" for good reason. Now, the court will address why Defendants fail to meet that burden.

The court needs devote little time addressing the *legal* sufficiency of the Board's complaint, as the Defendants do not seriously challenge it. The Defendants only argue that the Board's general allegations indicate fraudulent joinder. However, when a plaintiff names several defendants but does not allege specific conduct for each defendant, "allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." *Crowe*, 113 F.3d at 1539. Therefore, a plaintiff's pleading is not inadequate merely because it does not contain specific individualized allegations against the resident defendant.

The Defendants' challenge focuses on the *factual* sufficiency of the Board's claim against Industrial Chemicals, arguing "[t]he law requires more" than the "speculation" the Board provided inculpating Industrial Chemicals. (Doc. 189 at 3). The court disagrees with the Defendants' assessment for two reasons. First, the affidavits the Defendants submitted do not conclusively establish that Industrial Chemicals never sold, distributed, transported, supplied, or disposed of chemicals containing PFCs, or that would degrade into PFOS or PFOA compounds, that eventually contaminated the Board's water supply. Second, even if the affidavits do establish that Industrial Chemicals never sold PFCs, or otherwise contributed to the PFC contamination, the Board adequately disputes that evidence at this stage of the case.

    1. *Sufficiency of the Affidavits*

The Defendants submitted affidavits from William Welch and Chip Welch to establish that Industrial Chemicals never sold chemicals containing PFCs to Dalton customers, including

the defendants. However, Chip Welch's first affidavit attached to the notice of removal states that Industrial Chemicals "does not have records regarding product sales made prior to 2005." (Doc. 2-2 at 3). Also, William Welch's declaration that Industrial Chemicals has never sold or distributed products containing PFCs is based solely on his memory and his knowledge of the chemical structure of every product that Industrial Chemicals has sold since 1970. Given the lack of records, the testimony of two officers that Industrial Chemicals has not sold products containing PFCs over a forty-year span fails to present clear and convincing evidence that the Board does not have any possibility of recovering against that company.

The Defendants' other affidavits do not remedy this defect. If taken as true, the affidavits would only establish that, since 2005, Industrial Chemicals has not provided chemicals containing PFCs to other *defendant* companies; they would not establish that Industrial Chemicals *never* provided chemicals containing PFCs to any customer near Dalton, Georgia. Further, none of the affidavits speak to Industrial Chemicals' waste transportation business. The Defendants have not provided clear and convincing evidence that Industrial Chemicals did not transport or dispose of PFCs upstream from Gadsden. Thus, Defendants' affidavits leave open the important question of whether the resident defendant may be found liable for contaminating the Board's water source with perfluorinated chemicals. With such an opening, the court cannot say that Defendants have shown there is no possibility that Industrial Chemicals could be found liable.

2. *Whether the Board has Shown "Disputed" Issues*

Defendants' affidavits leave open the possibility that Industrial Chemicals' actions, at some point in time, contributed to the Board's contaminated water supply. But even if the court assumes that the Defendants' affidavits effectively assert that no possibility exists that Industrial

Chemicals could be liable to the Board, the Board has sufficiently challenged those affidavits so as to create a dispute of fact. Importantly, the court must resolve that dispute of fact in favor of the Board at this point of the litigation. *See Crowe*, 113 F.3d at 1542.

The Defendants have essentially asked for summary judgment, but the court cannot consider such a request in this procedural posture. *See* (Doc. 189 at 13) ("Utterly missing from plaintiff's submissions . . . is any *actual evidence or proof* that Industrial Chemicals made or distributed any product containing PFCs or that such compounds found their way into plaintiff's water supply."). Although summary judgment and fraudulent joinder share similar procedures, "the substantive standards are very different." *Crowe*, 113 F.3d at 1542. The case law has not always been clear about *how* the standards are different, but it has been clear that the standards *are* different.

A key difference between fraudulent joinder and summary judgment appears in the burden of production. Defendants seem to imply that the Board has an obligation similar to a respondent's burden of producing evidence under Rule 56. *See* Fed. R. Civ. P. 56 ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."). However, a fact may be sufficiently "disputed" for the purpose of fraudulent joinder even if the same response would not be sufficient to survive summary judgment because, for fraudulent joinder purposes, Plaintiff's burden is simply to offer *some* evidence to reasonably contest that of the Defendants. *See Legg v. Wyeth, 428.F3d 1317, 1323* (11th Cir. 2005); *See, e.g. Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 892 (fact was contested for fraudulent joinder analysis when plaintiff "generally contested [defendant's] version of events"). In this manner, defeating a fraudulent joinder motion is a "lighter" burden for the plaintiff than at summary judgment.

Defendants heavily lean on the affidavits of William Welch, Chip Welch, and Dr. Paustenbach to show the absence of any possibility that the Board has a legitimate cause of action against Industrial Chemicals. But the Board disputes those affidavits by attacking Chip Welch's lack of credentials that would qualify him to determine whether a chemical compound contains PFCs. And while Defendants presented Dr. Paustenbach's affidavit to shore up Chip Welch's declaration, his testimony is insufficient to prevent a dispute of fact. Dr. Paustenbach concluded that none of the products that Industrial Chemicals sold to defendants *in the carpet manufacturing industry* contain PFOA or PFOS. Again, this does not rule out the possibility that Industrial Chemicals contributed to the Board's injury by other means. But even if it did, the Board satisfies its light burden of presenting *some* evidence contesting Dr. Paustenbach's affidavit. *See Crowe*, 113 F.3d at 1541. The Board does so by noting that many of his past studies have suffered from defects. *See* (Doc. 193 at 13–15). Thus, Defendants' affidavits are not undisputed, and the court must resolve all contested issues of fact in favor of the Board. *Crowe*, 113 F.3d at 1541–42.

The Defendants' broader contention is that *Nelson v. Whirlpool Corp.*, 668 F. Supp. 2d 1368 (S.D. Ala. 2009) imposes a burden on the plaintiff to produce evidence inculpating the non-diverse defendant. But, even if it were controlling, *Nelson* does not impose such a burden of production. While ostensibly relying on *Nelson*'s holding, the Defendants ignore the analytical framework of the opinion—the application of Rule 11. *See id*. Instead, the Defendants hone in on Judge Steele's admonition that a plaintiff is not free to sue whomsoever he wishes simply because no exculpating evidence exists—unassailable as a legal principle but inapplicable to this case.

*Nelson* is not on point because the Board has conducted a reasonable investigation under

the circumstances, satisfying the requirements of Rule 11.[3] In *Nelson*, the plaintiffs sued a party without any evidence to support its theory of how the party could be liable to them, *despite being in possession of a means to obtain that evidence*. The court in *Nelson* did not find fraudulent joinder simply because the plaintiffs produced no inculpating evidence, but because the plaintiffs were in a position to determine whether a defect existed for which the resident defendant could be held responsible and elected not to do so. Under those circumstances, the investigation undertaken was not reasonable. *See Nelson*, 668 F. Supp. 2d at 1377–78.

The plaintiffs' deliberate inaction in the face of probative evidence in *Nelson* contrasts with the Board's position here. Here, the Defendants improperly claim the Board presented "*no evidence whatsoever*" that Industrial Chemicals could be liable to it. But, the Board has produced sufficient evidence to create "contested issues of fact" that the court must resolve in the Plaintiff's favor. *See Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997). The Board knows, through its own testing and EPA's confirmation, that PFCs contaminated its water supply. It knows, from Industrial Chemicals' own website and sales literature, that Industrial Chemicals sells, distributes, transports, and disposes of chemical products to or on behalf of companies in industries that have been known to use PFCs. The Board does not possess evidence it could test to determine whether Industrial Chemicals caused the chemical presence in its water, but it knows Industrial Chemicals distributed products known to contain PFCs. What more investigation could the Board have undertaken at this point? Judge Steele's admonition simply does not apply to the facts here. The Board has not blindly sued a defendant and then pled that the defendant lacks conclusive exculpating evidence. Instead, it has undertaken a reasonable

---

[3] Notably, *Nelson v. Whirlpool Corp.*, 668 F. Supp. 2d 1368 (S.D. Ala. 2009) is only persuasive authority. Thus the Rule 11 analysis is not the sole means of analysis available to this court.

investigation under the circumstances.

Is the evidence enough to survive summary judgment? Perhaps not. But Rule 56 is not the standard, and to apply it here would be premature. Despite the Defendants' protestations to the contrary, the evidence *is* inculpating, even if it is not conclusive. The Board is entitled to rely on circumstantial evidence and inductive reasoning at this point; it is only required to generally contest, not specifically refute, the Defendants' version of events. The Board has done that.

B. Fraudulent Misjoinder

The Defendants also claim the Board fraudulently misjoined Industrial Chemicals because "the factual nexus among alleged claims . . . does not satisfy the requirements of joinder set forth in Rule 20 of the Federal Rules of Civil Procedure." (Doc. 189 at 24).

Rule 20 permits plaintiffs to join claims against defendants if they assert a right to joint and several relief arising out of the same occurrence and if the claims share any question of law or fact. The rule is construed broadly. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

Whether and how the Board's water supply became contaminated with PFCs is a common question of fact among the claims against Industrial Chemicals and the other Defendants. Further, the allegation that Industrial Chemicals supplied products containing PFCs to Defendants who used them in their products, resulting in PFCs contaminating the Coosa River, means that the Defendants acted in concert, and would be jointly and severally liable. Therefore, the plaintiff's complaint easily satisfies Rule 20. The Board did not fraudulently misjoin Industrial Chemicals.

## IV. CONCLUSION

Defendants have failed to show that no possibility exists that the Board could prevail on its claims against Industrial Chemicals. Because the Defendants have failed to carry their burden in demonstrating that the Board fraudulently joined Industrial Chemicals, complete diversity does not exist and the court lacks subject matter jurisdiction over this case. The court will enter a separate order consistent with this opinion, granting the Board's motion and remanding this case to Etowah County Circuit Court.

**DONE** this 25th day of September, 2017.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE